UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 05-10752-NMG

| | |
|---|---|
| **SUSAN BARNETT WOOD,**<br>　　　Plaintiff<br><br>v.<br><br>**TOWN OF FALMOUTH,**<br>　　　Defendant | PLAINTIFF, SUSAN BARNETT WOOD'S, OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT |

Now comes the plaintiff, Susan Barnett Wood ("Wood") in the above-captioned matter and hereby opposes the defendant's Motion to Dismiss Count III of her Complaint. In support of her opposition, Wood states that the Americans with Disabilities Act of 1990 does not preclude a private right of action for the defendant's violation of 28 C.F.R. § 35.105 for its failure to conduct a self-evaluation. Where compliance with § 35.105 is integral to achieve the purpose of the ADA, and where there is a direct causal relationship between Falmouth's violation of this regulation and Wood's claims of discrimination, a private cause of action must be allowed. In further support of her opposition, the plaintiff submits the following Memorandum of Law:

## STATEMENT OF THE CASE

This action arises from the failure of the defendant, Town of Falmouth ("Falmouth"), to provide accessible and legally compliant public routes of pedestrian access, including sidewalks, crosswalks, and ramps, throughout Falmouth. The plaintiff, Susan Barnett Wood ("Wood") is a disabled Falmouth resident who requires the use of a wheelchair or motorized scooter to move about. (Complaint, ¶ 5.)

Repeatedly, and on a frequent and regular basis during the past three years, Wood has encountered dangerous and inaccessible conditions along a number of public pedestrian routes throughout Falmouth. (Complaint, ¶¶ 7-8.) The problems include a lack of sufficient landings at the top of curb ramps, excessive sidewalk cross slopes, excessive vertical displacements, lack of sufficient sidewalk clearance or sidewalk obstructions, lack of curb ramps, and excessive bumps or curve ramp lips. (Complaint, ¶ 9.) The hazardous and inaccessible nature of these areas has prevented Wood from traveling safely along these routes. (Complaint, ¶ 10.) On several occasions, the hazardous conditions have "caused the plaintiff's motorized scooter to jolt violently or to tip over. In some places, the plaintiff has been forced to operate her scooter on the street at a serious risk of injury and forcing her to suffer the indignity of being yelled at by passing motorists." Id.

Despite Wood's repeated attempts to bring these accessibility problems to the attention of Falmouth, the defendant has failed to take any remedial action whatsoever. (Complaint, ¶ 11.) Even a number of sidewalks, crosswalks, and ramps that have recently been renovated and repaved by Falmouth remain unsafe and in violation of the law. (Complaint, ¶ 12.)

In an effort to force Falmouth into compliance with the law in making these areas accessible and compliant, or to provide proper accommodations and program access, Wood has brought this action against Falmouth asserting claims for violation of Title II of the Americans with Disabilities Act of 1990, violation of § 504 of the Rehabilitation Act of 1973, violation of 28 C.F.R., § 35.105 for inadequate self-evaluation, and violation of the Massachusetts Equal Rights law, M.G.L. c. 93, § 103 and Article CXIV of the Massachusetts Constitution.

Falmouth has filed a motion to dismiss Count III of the plaintiff's complaint alleging inadequate self-evaluation under 28 C.F.R., § 35.105, arguing that a failure by Falmouth to comply with this provision of the ADA would not give rise to a private right of action.  Where, however, Wood's private cause of action to achieve Falmouth's compliance with 28 C.F.R., § 35.105 falls squarely within the Congressional intent for the achievement of ADA compliance, Wood now files this opposition.

**ARGUMENT**

I. **WHERE COMPLIANCE WITH 28 C.F.R., § 35.105 IS INTEGRAL TO ACHIEVE THE PURPOSES OF THE ADA AND WHERE THERE IS A DIRECT CAUSAL CONNECTION BETWEEN THE DEFENDANT'S VIOLATION OF THE STATUTE AND THE PLAINTIFF'S CLAIMS, A PRIVATE CAUSE OF ACTION SHOULD STAND.**

Falmouth's motion to dismiss is loosely predicated upon the United States Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275, 121 S. Ct. 1511 (2001), which recognized that "private rights of action to enforce federal law must be created by Congress.  The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id. at 286.  Beyond citing this broad finding, Falmouth relies solely on three cases in support of its Motion to Dismiss:  Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901 (6th Cir. 2004); Deck v. City of Toledo, 76 F. Supp.2d 816 (N.D. Ohio 1999); and Matthews v. Jefferson, 29 F. Supp.2d 525 (W.D. Ark. 1998). (Memorandum in Support of Defendant's Motion to Dismiss, pp. 2-5.)

As an initial matter, the courts in this jurisdiction do not appear to have yet addressed this issue, leaving it an open question.  Further, the "courts in one circuit are not bound by the decisions of other circuits." Lotus Dev. Corp. v. Borland Int'l.,

Inc., 799 F. Supp. 203 (D. Mass. 1992).  Rather, this Court's obligation is to determine the law manifested in the ADA and its accompanying regulations "as it would be interpreted and applied to this case by the Court of Appeals for the First Circuit and the Supreme Court should this case reach either or both of those courts."  Id. at 220.  Thus, the cases cited by Falmouth in support of its motion, from the Sixth Circuit Court of Appeals, from the Northern District of Ohio, and the Western District of Arkansas, are simply not controlling here.  To the extent that this Court is inclined to consider case law from other circuits, a much more thoughtful analysis of Sandoval's scope is set forth in Chaffin v. Kansas State Fair Board, 348 F.3d 850 (10th Cir. 2003).  The Chaffin court upheld the plaintiff's right to bring a private cause of action for failure to conduct self-evaluation or adopt a transition plan.  Id. at 859.  The Chaffin court held that "[p]roperly construed, Sandoval holds only that regulations (including § 35.105) may not create a private cause of action where no such right was intended by Congress in the statute authorizing promulgation of such regulations."  Id. at 857.

As set forth below, the cases cited by Falmouth are also limited in their scope and thus distinguishable from the case at hand.  A close review of these decisions and, more importantly, an examination and interpretation of the ADA and its accompanying regulations, makes it clear that Wood is entitled to pursue a private cause of action for the defendant's violation of 28 C.F.R., § 35.105.

The applicability of the Sandusky decision here is questionable given the findings of the United States Supreme Court in Tennessee v. Lane, 541 U.S. 509, 124 S. Ct. 1978 (2004).  The Sandusky court addressed the issue of whether a violation of 28 C.F.R., § 35.150(d) requiring public entities to develop a transition plan, is enforceable through Title II's private cause of action.  The Sandusky court held that where § 35.150(d) "imposes obligations not explicitly contemplated by Title II, then it is

4

not enforceable through the Act's private cause of action." Sandusky, 385 F.3d at 913. However, in Lane, the Supreme Court has already found that money damages are available under Title II, even though not explicitly contemplated by the Act. Lane, 541 U.S. at 532-34. As such, the Sandusky opinion, itself, seems predicated upon a logical analysis that has already been rejected by the Supreme Court.

Further, the Sandusky court reasoned that:

> Section 35.150(d) may create a procedural requirement that encourages public entities to consider and plan ways in which they will accommodate the disabled, and it may ultimately facilitate compliance with Title II, but there is no indication that a public entity's failure to develop a transition plan harms disabled individuals, let alone in a way that Title II aims to prevent or redress. Indeed, it is conceivable that a public entity could fully satisfy its obligations to accommodate the disabled while at the same time fail to put forth a suitable transition plan.

Id. at 914.

In this regard, the Sandusky opinion is, if not misguided, distinguishable from the instant action. While the requirement of preparing a transition plan "setting forth the steps necessary" to achieve program accessibility might arguably be considered a purely "procedural requirement," Section 35.105 in contrast specifically requires that "the public entity shall proceed to make the necessary modifications." 28 C.F.R., § 35.105(a).[1] As such, where the requirement that a public entity conduct a self-

---

[1] Interestingly, Falmouth moves to dismiss Wood's claim under 28 C.F.R., § 35.105 without ever discussing what the regulation provides, instead vaguely characterizing it as "very similar" to § 35.150(d). (Memorandum in Support of Defendant's Motion to Dismiss, p. 3, n. 4.) However, § 35.105 Self-evaluation provides:

> (a) A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.
>
> (b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with

5

evaluation carries with it the specific requirement that the public entity then proceed to make the necessary modifications, it is clear that a violation of this regulation does indeed harm disabled individuals.  In this respect, § 35.150(d) is not a procedural requirement to encourage public entities to consider and plan ways in which they will accommodate the disabled, but rather it is a regulatory vehicle specifically designed to bring about compliance with Title II.  Consequently, the defendant's reliance upon the Sandusky decision is misplaced.  Moreover, Sandusky contemplates that a public entity may comply with the ADA without a transition plan; here, Falmouth is clearly not in compliance with the ADA, so the hypothetical does not apply to the case at bar.

    Similarly, the Deck decision is also distinguishable from the instant matter.  The Deck court found that the plaintiffs in that case did not have a private right of action against the City of Toledo to enforce self-evaluation and transition plan requirements in part because the "Plaintiffs have not made a claim under either of these sections…." Deck, 76 F. Supp.2d at 823.  Clearly this reasoning is inapplicable here, where Wood has definitively advanced her claim under 28 C.F.R., § 35.105.

    The Deck court advanced a second reason as to why the plaintiffs in that case had no private right of action, holding that the defendant's failure to comply with the

---

disabilities, to participate in the self-evaluation process by submitting comments.

(c)  A public entity that employs 50 or more persons shall, for at least three years following completion of the self-evaluation, maintain on file and make available for public inspection:

(1)  A list of the interested persons consulted;
(2)  A description of areas examined and any problems identified; and
(3)  A description of any modifications made.

(d)  If a public entity has already complied with the self-evaluation requirement of a regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this section shall apply only to those policies and practices that were not included in the previous self-evaluation.

self-evaluation and transition plan requirements "is relevant to this case only to the extent that Plaintiffs are able to demonstrate that such failure bears a causal connection to their claims of discrimination." Id.  Unlike in the Deck case, Falmouth's violation of 28 C.F.R., § 35.105 and its failure to conduct a proper self-evaluation is alleged by Wood to be a direct cause of her damages and claims of discrimination. (Complaint, ¶¶ 27-31.)  At the very least, it remains a question of fact to be determined at trial as to whether such a causal connection can be demonstrated.  For these reasons, the Deck decision provides no support for Falmouth's motion to dismiss.

The third case cited by Falmouth, Matthews, also provides no support for the defendant's motion to dismiss.  The Matthews court also acknowledged that "to state a valid claim for enforcement of the self-evaluation requirements, plaintiff must allege a clear causal connection between the defendant's failure to evaluate its services and his asserted injury." Matthews, 29 F. Supp.2d at 539-40 (quoting McCready v. State Bar Standing Committee, 926 F. Supp. 618, 622 (W.D. Mich. 1995), Aff'd without op., 100 F.3d 957 (6th Cir. 1996)).  Once again, in this case, Wood has alleged a clear causal connection between Falmouth's failure to evaluate its services and her claims of discrimination.  Thus, according to Falmouth's own cited precedent, even if that precedent is not controlling, Wood's claims contained in Count III of her complaint must stand.

The Matthews court further contemplated that "money damages against a public entity for failure to formulate a transition plan or timely comply with the plan are not available," and as a result a "plaintiff may use evidence of failure to comply with these requirements to buttress his claim of discrimination.  He just may not recover separate damages due to a failure to complete the proper self-evaluation or transition plan or to comply with the timelines set forth therein." Id. at 540.  While

7

adopting this proposition would appear to preclude Wood from recovering separate damages if she succeeds in prevailing on Count III of her complaint, the Matthews court does not suggest, as the defendant argues, that a plaintiff is precluded from even asserting these claims. It follows that the defendant's Motion to Dismiss should be denied.

That the purpose of § 35.105 is to serve as a practical implement to effectuate compliance with the provisions of Title II is illustrated by the observations of the United States Supreme Court in Lane. In finding that Title II is a valid exercise of Congress's enforcement power under § 5 of the Fourteenth Amendment, the Lane court acknowledged that the difficult and intractable problem of disability discrimination warranted added prophylactic measures:

> It is not difficult to perceive the harm that Title II is designed to address. Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights.... This pattern of disability discrimination persisted despite several federal and state legislative efforts to address it.... The 'overwhelming majority' of these examples concern discrimination in the administration of public programs and services.

Lane, 541 U.S. at 525-26. Given the demonstrated resistance by public entities to bringing their programs and services into compliance, "Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." Id. at 531.

Regulations such as § 35.105 "simply provide the details necessary to implement the statutory right created by § 12132 of the ADA. They do not prohibit otherwise permissible conduct." Chaffin v. Kansas State Fair Board, 348 F.3d 850, 858 (2003) (citing Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000) ("The language of Title II does not elaborate on the obligation of a public entity to an

8

individual with a disability in the provision of 'services, programs, or activities.'  We must rely for specifics on the regulations promulgated under Title II.").  As a result, a proper application of the Sandoval case here does not preclude Wood's claim for violation of § 35.105.

As a practical matter, private causes of action must be allowed to enforce compliance with § 35.105 in order for the regulation to have any meaningful impact.  The requirement of conducting a self-evaluation and actually making the necessary modifications according to § 35.105 is clearly an integral part of the legislative and statutory framework established to achieve compliance with the ADA.  Without the threat of a private cause of action to enforce § 35.105, compliance with the ADA by entities like Falmouth is sure to take longer, be less direct, and more haphazard.  Certainly, such a result is thoroughly inconsistent with the recognized Congressional intent in enacting the ADA.

WHEREFORE, for all of the foregoing reasons, the plaintiff, Susan Barnett Wood, respectfully requests that the defendant's motion to dismiss Count III of her complaint be denied.

                Respectfully submitted,

                **CLARK, HUNT & EMBRY**

                /s/ Michael B. Newman
                _____
                Michael B. Newman (632222)
                William J. Hunt (244720)
                55 Cambridge Parkway
                Cambridge, MA  02142
                (617) 494-1920